# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANTHONY MAURICE JACKSON, | : | |
| | : | Case No. 2:21-cv-9404 (BRM) (JBC) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DR. SCOTT MILLER, et al., | : | |
| | : | |
| Defendants. | : | |

Before the Court is Plaintiff *pro se* prisoner Anthony Maurice Jackson's ("Plaintiff") civil rights complaint ("Complaint"), filed pursuant to 42 U.S.C. § 1983 (ECF No. 1, "Compl.") and an application to proceed *in forma pauperis* ("IFP"). (ECF No. 9.)  Plaintiff originally paid the $402 filing fee, but subsequently filed letters requesting the United States Marshal Service ("USMS") execute service on his behalf. (ECF No. 4 and 6.) On July 28, 2021, the Court granted Plaintiff leave to proceed IFP for the purpose of issuance and service of process by the USMS and ordered the Clerk of the Court to mail Plaintiff a transmittal letter explaining the procedure for completing Unites States Marshal ("Marshal") 285 Forms ("USM-285 Forms"). (ECF No. 7.) Petitioner then filed a formal IFP application, requesting to proceed IFP for the entirety of this matter. (ECF No. 9.) Based on his affidavit of indigence (ECF Nos. 9-3 and 9-4), the Court grants him leave to proceed IFP.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, and for good cause appearing, the Complaint is **DISMISSED** in its entirety.

## I. BACKGROUND

According to the Complaint, on June 15, 2018, Defendant Dr. Scott Miller performed a total left knee replacement on Plaintiff at St. Francis, Medical Center. (Compl. at ¶ 14.)[1] Plaintiff submits that after the surgery his condition worsened, resulting in pain, stiffness, and fluid retention in the entire left leg. (*Id.* at ¶ 15.) Plaintiff sought medical attention at East Jersey State Prison ("E.J.S.P.") medical department, complaining of swelling, pain, and discomfort. (*Id.* at ¶ 16.) The medical staff told Plaintiff that "it would just go away." (*Id.* at ¶ 17.)

From June 2018 through October 2019, the medical staff Defendants provided "unsatisfactory answers, care, and lacked professionalism concerning this matter." (*Id.* at ¶ 18.) Plaintiff submits that the doctor and nurse practitioner Defendants failed to provide medical care by failing to run the tests necessary to diagnoses Plaintiff. (*Id.* at ¶ 19.)

On August 19, 2019, after one-year of doctor visits, written grievances, and complaints, a three-phase bone scan showed left knee prosthesis and it was indicated that Plaintiff's pain was "consistent with infection." (*Id.* at ¶ 20.) On October 14, 2019, testing showed methicillin sensitive "staph aureus."  (*Id.* at ¶ 21.) On December 6, 2019, a blood culture revealed serratia marcesceus. (*Id.*)

Plaintiff alleges Defendant Dr. Lynch and nurse practitioner Sumicad violated Plaintiff's "Eighth Amendment right to be free from cruel and unusual punishment [] based upon defendants' negligence, deliberate indifference to [Plaintiff's] serious medical needs, resulting in malpractice." (*Id.* at ¶ 22.) Defendant Lynch failed to properly treat the issue by conducting necessary testing,

---

[1] The factual allegations are taken from the Amended Complaint and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

which could have detected the infection. (*Id.* at ¶ 24.) Plaintiff has suffered physical pain and mental anguish based upon the actions and inactions of all defendants. (*Id.* at ¶ 25.)

On October 19, 2019, prison officials transported Plaintiff to St. Francis Medical Center, where Dr. Shakir removed the prosthesis and inserted an antibiotic-cement spacer in Plaintiff's knee. (*Id.* at ¶ 26.) Plaintiff returned to E.J.S.P. and was confined to the infirmary and given antibiotics for four months. (*Id.* at ¶ 27.) On August 5, 2020, Dr. Shakir performed another surgery removing the spacer and another total knee replacement. (*Id.* at ¶ 29.)

Plaintiff alleges ongoing side effects, including angioneurotic edema, temporal arthritis, anemic post-surgery, severe pain, and risk of losing his leg. (*Id.* at ¶ 31-32.) Plaintiff must use a cane when he walks, and his leg is disfigured. (*Id.* at ¶ 33.) Plaintiff's leg continues to retain fluid and he must wear medical stockings, take medication, and requires orthopedic footwear. (*Id.* at ¶ 34.) Defendant Lynch fails to address Plaintiff's need for medical footwear and Dr. Shakir's recommendation Plaintiff receive professional treatment from a podiatrist. (*Id.* at ¶ 37-38.)

Plaintiff seeks declaratory and monetary relief. (*Id.* at 9.)

## II. LEGAL STANDARD

### A. Standard for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is

subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who is proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive sua sponte screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**B. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, the alleged

deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III. DECISION

### A. Denial of Medical Care

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. The test for "deliberate indifference" requires that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Id.* at 837–38.

Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.

*Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 (citations omitted).

### 1. Defendant Dr. Scott Miller

Plaintiff alleges that Defendant Miller violated his Eighth Amendment rights when he performed a total left knee replacement on Plaintiff and after the surgery his condition worsened, resulting in pain, stiffness, and fluid retention in the entire left leg. (Compl. at ¶¶ 14-15.) Plaintiff claims Defendant Miller's negligence and malpractice during his initial surgery caused Plaintiff's infection and side effects were caused by. (*Id.* at ¶ 30.)

Plaintiff has not stated facts to support an Eighth Amendment deliberate indifference claim against Defendant Miller. Defendant Miller performed Plaintiff's knee replacement surgery and, based on the Complaint, Plaintiff suffered complications post-surgery. There are no facts alleged to show that Defendant Miller was aware of an excessive risk to Plaintiff and disregarded said risk. *Farmer*, 511 U.S. at 837. The Complaint does not allege that Defendant Miller was involved in Plaintiff's post-surgery care nor does it allege Defendant Miller was aware of Plaintiff's infections following surgery. Plaintiff's dissatisfaction with the results of his surgery does not amount to deliberate indifference. *Andrews*, 95 F. Supp. at 228. Negligence in treatment "does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. Plaintiff's Eighth Amendment § 1983 claim for inadequate medical care against Defendant Miller is **DISMISSED WITHOUT PREJUDICE**.

### 2. Defendant Dr. Lynch

Plaintiff alleges generally that "for an entire year" Defendant Lynch denied Plaintiff his Eighth Amendment right to be free from cruel and unusual punishment based on "negligence, deliberate indifference to my serious medical needs, resulting in malpractice." (Compl. at ¶ 22[2].) Plaintiff goes on to argue Defendant Lynch failed to properly treat Plaintiff and perform the necessary tests to detect the infection. Plaintiff also submits the swelling of his feet due to edema

---

[2] Plaintiff also names nurse practitioner Sumicad in this allegation. It is unclear if Plaintiff wishes to name nurse practitioner Sumicad as a defendant here. Plaintiff does not list Sumicad as a defendant in the caption of the Complaint. The only mention of Sumicad in the entirety of the Complaint is in paragraph 22, where Plaintiff states nurse practitioner Sumicad violated Plaintiff's Eighth Amendment rights for an entire year. Plaintiff fails to allege any facts to show Sumicad was personally involved in Plaintiff's medical care. Any claim against nurse practitioner Sumicad is dismissed without prejudice because Plaintiff does not allege facts to suggest this defendant had any involvement with the claims alleged in Plaintiff's Complaint. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs.").

requires medical footwear and Defendant Lynch and other E.J.S.P. Defendants have failed to address this issue. (*Id.* at ¶ 24.) Plaintiff makes a general allegation that for one-year he had doctor visits and wrote grievances and complaints, but it is not clear that any of those visits were with Defendant Lynch. (*Id.* at ¶ 20.) It is also not clear whether Plaintiff's "grievances and complaints" were directed to Defendant Lynch.

Plaintiff offers no facts to show Defendant Lynch had personal knowledge of Plaintiff's medical needs. It is not clear if Defendant Lynch saw Plaintiff during his medical visits or if Defendant Lynch provided any medical treatment to Plaintiff. Plaintiff complains generally that Defendant Lynch failed to properly treat Plaintiff and was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff's allegations that Defendant Lynch denied him medical care and testing are vague and conclusory and lack sufficient factual support.

For these reasons, Plaintiff's Eighth Amendment § 1983 claim for inadequate medical care against Defendant Lynch is **DISMISSED WITHOUT PREJUDICE**. Because it is possible Plaintiff could plead additional facts to state a § 1983 claim against Defendant Lynch to show personal involvement and deliberate indifference in denying medical care, he may submit an amended complaint within 30 days to the extent he can cure the deficiencies in his claims.

### 3. Medical Defendants

Plaintiff alleges generally that he complained to "medical department defendants." (Compl. at ¶¶ 16-18.) Plaintiff states the medical staff defendants "provided unsatisfactory answers, care, and lacked professionalism concerning this matter." (*Id.* at ¶ 18.) The Complaint alleges the medical defendants failed to provide medical care for Plaintiff's serious medical needs. (*Id.* at ¶ 19.)

Plaintiff raises these issues against medical defendants collectively and fails to allege

specific facts against particular medical defendants. This group pleading is prohibited. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297 at *2 (D.N.J. June 29, 2015) (citing *Aruanno v. Main*, 467 F. App'x 134, 137–38 (3d Cir. 2012) (dismissing a § 1983 action was appropriate where Defendants were collectively sued as "[government] personnel" and failed to allege the personal involvement of the individual Defendants)).  A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.*  When a number of defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "*which* defendants engaged in what wrongful conduct." *Falat v. County of Hunterdon*, 2013 WL 1163751 at * 3 (D.N.J. Mar. 19, 2013).  A complaint that contains "impermissibly vague group pleading" will be dismissed. *Id.* at *11.  Any Eighth Amendment denial of medical care again general "medical defendants" is **DISMISSED**.

### 4. Defendant Marcus Hicks

Plaintiff alleges Defendant Hicks, as the Acting Commissioner of the New Jersey Department of Corrections, is "responsible for overseeing [] policy and procedure." (Compl. at ¶ 13.) The Complaint claims Defendant Hicks is responsible for actions of St. Francis Medical Center because he is responsible for hiring the health care provider. (*Id.*)

Supervisors are not vicariously liable for their subordinates' acts. *See Rode*, 845 F.2d at 1207. Supervisory liability is allowed, however, if the supervisors: (1) "established and maintained a policy, practice or custom which directly caused the constitutional harm"; or (2) "they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). Plaintiff fails to cite to any policy, practice, or custom. While

Plaintiff alleges Defendant Hicks is responsible for the Department of Corrections policies and procedures, he fails to adequately allege sufficient facts to show Defendant Hicks maintained or established any policy, if any, violated his constitutional rights.  Plaintiff also fails to state any facts that would support a claim that Defendant Hicks personally participated in violating Plaintiff's rights. Without further information, these claims cannot proceed and are **DISMISSED**. *See Iqbal*, 556 U.S. at 678.

### 5. St. Francis Medical Center

Plaintiff names St. Francis Medical Center as a defendant, alleging Defendant St. Francis Medical Center was the health care provider for the New Jersey Department of Corrections and "administers medical examinations and medical procedures on prisoners." (Compl. at ¶ 11.) The Complaint claims Defendant St. Francis Medical Center "knowingly, purposefully, willfully, intentionally, maliciously and deliberately denied Plaintiff medical care and treatment and refus[ed] to properly administer treatment." (*Id.* at ¶ 43.)

Based on the Complaint, it is unclear if Defendant St. Francis Medical Center is a state actor. *See, e.g., Villegas v. Correctional Medical Services, Inc.*, No. 14-7337, 2016 WL 3708218, at *3 (D.N.J. Apr. 9, 2012) (dismissing St. Francis Medical Center as a non-state actor).

Additionally, an entity defendant providing medical services to prisoners pursuant to a contract "cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability."  *See Natale v. Camden County Correctional Facility*, 318 F.3d, 575, 583–84 (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  Here, Plaintiff would need to provide facts showing that Defendant St. Francis Medical Center had a relevant policy or custom, and that the policy or custom caused the constitutional violation she alleges.  *See id.* (considering standard of proof at summary judgment) (citing *Bd. of County*

*Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).  Plaintiff fails to cite to any policy or custom of Defendant St. Francis Medical Center.  While Plaintiff alleges the Defendant deliberately denied Plaintiff medical care, St. Francis Medical Center is an entity, not an individual. Because Plaintiff has not provided facts to suggest that a policy or custom of Defendant St. Francis Medical Center caused the constitutional violation, he fails to state a claim for relief against this entity Defendant, and the Court dismisses this Defendant at screening for failure to state a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B).

## IV. CONCLUSION

For the reasons stated above, the Complaint is dismissed without prejudice in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A for failure to state a claim upon which relief may be granted.[3] Because it is conceivable Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open this case and to file an amended complaint. An appropriate order follows.

Dated: October 5, 2021

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

---

[3] Because the Court dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction.")