## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ANTHONY MAURICE JACKSON,** | |
| **Plaintiff,** | **Civil Action No. 21-9404 (BRM)** |
| **v.** | **OPINION AND ORDER** |
| **DR. SCOTT MILLER,** *IN HIS INDIVIDUAL CAPACITY*, **et al.,** | |
| **Defendants.** | |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a Motion by *pro se* Plaintiff Anthony Maurice Jackson ("Plaintiff") seeking leave to file an Amended Complaint [ECF No. 17]. No oral argument was heard pursuant to Fed. R. Civ. P. 78. After considering the arguments in support of the Motion,[1] for good cause, and for the reasons set forth below, Plaintiff's motion to amend [ECF No. 17] is **GRANTED in part and DENIED in part**.

### I.     BACKGROUND

On April 15, 2021, Plaintiff, a prisoner at the East Jersey State Prison, initiated this 42 U.S.C. § 1983 action against multiple defendants for violating his Eighth Amendment right to adequate medical care. *See* ECF No. 1. On August 3, 2021, Plaintiff filed an application to proceed in forma pauperis ("IFP"). *See* ECF No. 9.

On October 5, 2021, the Honorable Brian R. Martinotti, U.S.D.J., screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2) and 1915A and issued an Opinion and Order granting

---

[1] To date, none of the named defendants have entered an appearance and thus could not have submitted an opposition, if any, to the instant motion.

Plaintiff's IFP application and dismissing without prejudice Plaintiff's complaint for failure to state a claim upon which relief may be granted. [ECF Nos. 12 and 13]. Judge Martinotti allowed Plaintiff thirty days to "move to reopen his case, attaching to any such motion a proposed amended complaint which addresses the deficiencies" of Plaintiff's original complaint. ECF No. 13. After Plaintiff requested an extension of time [ECF No. 14] which the Court granted [ECF No. 15], Plaintiff filed the instant Motion to File an Amended Complaint on November 23, 2021. [ECF No. 17].

Plaintiff's proposed Amended Complaint alleges that on June 14, 2018, Defendant Dr. Scott Miller performed a total left knee replacement on Plaintiff at St. Francis Medical Center. ECF No. 17-2 ("Am. Compl.") at ¶ 15. Plaintiff submits that on or about July 17, 2018, he experienced "what was presumed to be post-surgery swelling, stiffness, and joint pain, and complained to Defendant concerning his pain and suffering." *Id.* at ¶ 16. Although Plaintiff does not specify in this paragraph to which defendant he is referring, the following paragraph indicates he complained to Dr. Barrington Lynch, and states the following:

> 17. Although Defendant Lynch explained this [swelling, stiffness, and joint pain] was associated with post-surgery swelling, and alleged it was normal, Plaintiff's condition worsened throughout the year, and Dr. Lynch failed in administering test and or arranging procedures that would have clearly shown Plaintiff's complaints were with merit because plaintiff was literally infected (bone-methicillin sensitive "staph aureuso" and blood-serratia marcesceus) that as a result from negligence and deliberate indifference the infection festered within plaintiff for over a year. The Plaintiff (Mr. Jackson) could have died as result of actions and lack thereof by Dr. Lynch.

*Id.* at ¶ 17.

Plaintiff further avers he saw Dr. Lynch from August 8, 2018 through March 8, 2019, "complaining about his post-surgery pain," but Dr. Lynch "ignored these complaints with

prejudice and ultimately declined to see Plaintiff any longer as a patient if he mentioned anything pertaining to his knee and or Orthopedic footwear[.]" *Id.* at ¶ 18.

Plaintiff then requested to see another medical professional, and alleges he began seeing Defendant Nurse Practitioner Alejandrina Sumicad for treatment on April 16, 2019, and has continued to see Ms. Sumicad as of November 23, 2021, the date Plaintiff filed the motion to amend. *Id.* at ¶¶ 19-20. Plaintiff states that it was one year post surgery, on August 19, 2019, that a "three-phase bone scan was conducted revealing evidence of left knee prosthesis" that was "'consistent with infection.'" *Id.* at ¶¶ 25-26.[2] Further testing done in October and December 2019 revealed "the Methicillin Sensitive 'Staph Aureuso'" and "Serratia Marcesceus (MSSA)." *Id.* at ¶¶ 27-28.

According to the proposed amended complaint, had Dr. Lynch and Ms. Sumicad timely performed proper testing, Plaintiff's infection would have been detected sooner, saving Plaintiff from a year's worth of "pain and suffering," and preventing his condition from worsening. *Id.* at ¶ 30. As a result of these symptoms, Plaintiff was required to undergo several additional medical procedures on his left knee, including the insertion of a spacer into his knee on October 19, 2019, another medical procedure on August 5, 2020, and finally another total knee replacement and removal of the spacer on August 6, 2020. *Id*. at ¶¶ 32-35.

Plaintiff's proposed amended complaint alleges that Defendants, acting under the color of state law, subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment, which prohibits state actors from acting with deliberate indifference to serious medical needs of prisoners. *See* Am. Compl. at ¶¶ 36-55.

---

[2] The test was conducted by a doctor that is not a party in the instant suit. *See* Am. Compl. at ¶¶ 25-26.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." The decision to grant leave to amend rests within the sound discretion of the trial court. *See Zenith Radio Corp. v. Hazeltine Rsch. Inc.,* 401 U.S. 321, 330 (1970). In determining a motion for leave to amend, Courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In addition, "[t]he Third Circuit has consistently emphasized the liberal approach to pleading embodied by Rule 15." *Endo Pharms. v. Mylan Techs. Inc.*, 2013 U.S. Dist. LEXIS 32931, at *4 (D. Del. Mar. 11, 2013). The Court should only deny leave when these factors "suggest that amendment would be 'unjust'. . . [.]" *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

An amendment will be considered futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted). In determining whether an amendment is insufficient on its face, the Court employs the same standard as in a Rule 12(b)(6) motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted). Under a Rule 12(b)(6) analysis, the question is not whether the movant will ultimately prevail, and detailed factual allegations are not necessary to survive such a motion. *Antoine v. KPMG Corp.*, 2010 WL 147928, at *6 (D.N.J. Jan. 6, 2010). Additionally, "[a]ll allegations in the complaint

4

must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992) (citation omitted). If a proposed amendment is not clearly futile, then denial of leave to amend is improper. *Meadows v. Hudson Cnty. Bd. of Elections*, 2006 WL 2482956, at *3 (D.N.J. Aug. 24, 2006).

## III.   DISCUSSION

Plaintiff's claims arise under 42 U.S.C. § 1983. *See* ECF No. 12 ("Opinion") at 1; Am. Compl. at ¶ 1. To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution, and, second, that the alleged deprivation was caused by a person acting under the color of state law. *See* Opinion at 4-5 (citing *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)).

Plaintiff's proposed Amended Complaint, like his original complaint, alleges that Defendants, acting under the color of state law, subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment, which prohibits state actors from acting with "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also* Am. Compl. at ¶ 55. As stated in Judge Martinotti's October 5, 2021 Opinion, an inmate must show the following in order to set forth a cognizable claim for a violation of his right to adequate medical care: "(1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need." Opinion at 5 (citing *Estelle*, 429 U.S. at 106).

While Judge Martinotti set forth the legal standard for what constitutes a "serious medical need," he did not state whether Plaintiff satisfied this first prong of the *Estelle* test. *See id.* at 5. However, the injuries alleged by Plaintiff appear to satisfy this requirement, as the pain in his left knee was serious enough to warrant multiple surgeries as well as ongoing treatment by medical

professionals. Thus, the Court will assume at this preliminary stage in the proceedings that Plaintiff has satisfied his burden of demonstrating serious medical need.

The Court will instead focus on the second prong of the *Estelle* inquiry, "deliberate indifference," which requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. *See* Opinion at 5. The test for "deliberate indifference" requires that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Id.* at 837–38.

Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need

for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met . . . . Finally, deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.

*Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted).

### A.  Defendant Dr. Scott Miller

In the October 5, 2021 Opinion, Judge Martinotti dismissed the claim against Defendant Dr. Scott Miller because the original complaint neither alleged facts to "show that Defendant Miller was aware of an excessive risk to Plaintiff and disregarded said risk" while performing the operation, nor to establish that Defendant Miller was involved in Plaintiff's post-surgery care or aware of Plaintiff's infections following surgery. Opinion at 7. Judge Martinotti therefore held that the original complaint did not state facts to support an Eighth Amendment "deliberate indifference" claim against Defendant Miller. *Id.*

In the proposed Amended Complaint, Plaintiff alleges that Defendant Miller "knew or should have known" that Plaintiff would experience post-surgery problems and "should have scheduled follow-up examinations," and was negligent since he failed to do so. *See* Am. Compl. at ¶¶ 31, 37. However, these additional allegations do not sufficiently resolve the deficiencies addressed by Judge Martinotti in that they do not show that Defendant Miller was aware of an excessive risk to Plaintiff and affirmatively disregarded that risk. Thus, Plaintiff's proposed Amended Complaint fails to state a valid Eighth Amendment claim against Defendant Miller upon which relief may be granted and the request to file amended claims against Defendant Dr. Scott Miller is **DENIED**.

7

### B.      Defendant Dr. Barrington Lynch

In the October 5, 2021 Opinion, Judge Martinotti dismissed Plaintiff's § 1983 claim against Defendant Dr. Lynch because the original complaint only generally alleged that Plaintiff consistently complained and saw doctors, but lacked sufficient factual support to establish that Defendant Lynch, specifically, acted with "deliberate indifference." *See* Opinion at 8. Judge Martinotti explained that the complaint failed to demonstrate that Defendant Lynch himself had seen Plaintiff during the one year of post-operation medical visits, or that Defendant Lynch had personal knowledge of Plaintiff's medical needs at all. *Id.*

Plaintiff's proposed Amended Complaint provides numerous dates of medical visits and written grievances in which Plaintiff complained directly to Defendant Lynch of his pain and concern. *See* Am. Compl. at ¶ 19. Further, Plaintiff alleges that Defendant Lynch denied Plaintiff's requests for new orthopedic footwear and threatened to stop seeing Plaintiff if he "mentioned anything pertaining to his knee and or orthopedic footwear." *Id.* at ¶¶ 18-19. In addition to Plaintiff personally addressing his concerns to Defendant Lynch, Dr. Shakir, who had performed Plaintiff's second knee replacement surgery, recommended that Plaintiff be seen by a podiatrist, and Defendant Lynch allegedly ignored this referral. *Id.* at ¶ 19.

These additional facts in Plaintiff's proposed Amended Complaint, including specific dates of visits to Defendant Lynch throughout 2018 and 2019, sufficiently address the deficiencies raised by Judge Martinotti, such that Plaintiff's claims against Defendant Lynch may proceed. These allegations, if taken as true, satisfactorily state a claim upon which relief may be granted and are sufficient to demonstrate that Defendant Lynch was well aware of Plaintiff's medical issues and intentionally denied adequate medical treatment, thereby satisfying the "deliberate indifference" inquiry and rising above mere medical malpractice. *See Lanzaro*, 834 F.2d at 346; *see also Estelle*,

429 U.S. at 106-07. Furthermore, the first prong of the *Estelle* test, "serious medical need," is satisfied as well since Plaintiff alleges that the denial of care resulted in "permanent damage," such as Plaintiff walking with a "prominent limp" and needing a cane. *See* Am. Compl. at ¶¶ 45-46. This inquiry is also satisfied since Dr. Shakir diagnosed Plaintiff's condition as needing treatment by recommending that he see a Podiatrist. *See Lanzaro*, 834 F.2d. at 347; Am. Compl. at ¶¶ 39-41. Therefore, the claims in Plaintiff's proposed Amended Complaint against Defendant Dr. Lynch may **PROCEED** under the liberal approach to amending pleadings embodied in Fed. R. Civ. P. 15. *See Endo Pharms.*, 2013 U.S. Dist. LEXIS 32931, at *4.

### C.    Defendant Nurse Practitioner Alejandrina Sumicad

Unlike the original complaint, the proposed Amended Complaint names Ms. Sumicad as a Defendant. *See* Am. Compl. at ¶ 13. The proposed amended complaint provides several dates on which Plaintiff complained directly to Defendant Sumicad of his pain, alleging sufficient facts, if accepted as true, that show that Defendant Sumicad had knowledge of Plaintiff's condition, and like Defendant Lynch, refused to administer the proper tests, instead assuring Plaintiff that the pain "would just go away." *Id.* at ¶¶ 20-24. These facts are adequate to satisfy the second prong of the *Estelle* inquiry, "deliberate indifference," as Plaintiff has claimed he saw Defendant Sumicad numerous times and provided a concrete example of Defendant Sumicad failing to provide Plaintiff adequate medical care. *See Lanzaro*, 834 F.2d at 346. As such, the claims against Defendant Sumicad in Plaintiff's proposed Amended Complaint satisfy the pleading standards under Fed. Rules Civ. P. 12(b)(6) and 15 and may **PROCEED.**

### D.    Defendant New Jersey Department of Corrections

In the October 5, 2021 Opinion, Judge Martinotti dismissed the supervisory liability claim in Plaintiff's original complaint against Defendant Marcus Hicks, commissioner of the New Jersey

Department of Corrections, who Plaintiff claimed was responsible for retaining St. Francis Medical Center as the health care provider for inmates at East Jersey State Prison. *See* Opinion at 9.

In the proposed Amended Complaint, Plaintiff does not bring a claim against Hicks, but instead brings a claim against the New Jersey Department of Corrections as a whole, alleging that the institution deliberately denied Plaintiff medical care by hiring St. Francis Medical Center as an "occupational medical health provider for New Jersey State" prisoners. Am. Compl. at ¶ 52. However, New Jersey Department of Corrections is an entity, rather than an individual, so Plaintiff instead must demonstrate that a policy or custom of the entity caused the constitutional violation. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). The amended complaint does not mention any such custom or policy of Defendant New Jersey Department of Corrections, and therefore Plaintiff does not state an Eighth Amendment claim upon which relief may be granted. Thus, without further information, Plaintiff's claims against Defendant New Jersey Department of Corrections cannot proceed and leave to amend as to these claims is **DENIED**.

### E.      Defendants St. Francis Medical Center & Medical Defendants

Judge Martinotti dismissed the claim in the original complaint against St. Francis Medical Center because Plaintiff failed to provide facts showing that St. Francis "had a relevant policy or custom, and that policy or custom caused the constitutional violation" alleged. *See* Opinion at 10-11. Plaintiff's proposed Amended Complaint similarly fails to provide any facts demonstrating any such policy, and instead only states that St. Francis Medical Center "denied the plaintiff medical care," which, as mentioned above, is an invalid claim when brought against an entity. Am. Compl. at ¶ 53; *see also Natale*, 318 F.3d at 583-84. Thus, without further information, Plaintiff's

amended claim against Defendant St. Francis Medical Center cannot proceed and leave to file it is hereby **DENIED**.

Finally, regarding the "Medical Defendants" named in Plaintiff's original complaint, Judge Martinotti dismissed the claim against the same because the complaint referred to the group generally and failed to allege facts establishing the individual Defendants' distinct roles in the alleged misconduct. *See* Opinion at 8-9. Plaintiff's proposed Amended Complaint does not sufficiently address this deficiency, as the allegations made against the "Medical Doctors at St. Francis Medical Center" each refer to "John/Jane Does 1-10" collectively, without specifying "'which defendants engaged in what wrongful conduct.'" *See id.* (quoting *Falat v. Cnty. of Hunterdon*, 2013 WL 1163751 at \*3 (D.N.J. Mar. 19, 2013)). Further, the proposed amended complaint appears to only name one additional Medical Defendant, Ms. Sumicad, and does not allege any specific actions that the yet-to-be-identified Medical Defendants took or failed to take that resulted in violations of Plaintiff's Eighth Amendment rights. Thus, without further information, Plaintiff's claims against the Medical Defendants cannot proceed and leave to amend as to these claims is **DENIED**.

## IV.    CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 28th day of June 2022,

**ORDERED** that Plaintiff's Motion to Amend [ECF No. 17] is **GRANTED in part and DENIED in part;** and it is further

**ORDERED** that this matter shall be **REOPENED**; and it is further

11

**ORDERED** that Plaintiff shall file and serve the Amended Complaint, as modified by the herein Opinion and Order, within **thirty (30) days** of receipt of this Opinion and Order; and it is further

**ORDERED** that the Clerk of the Court shall mail to Plaintiff a transmittal letter explaining the procedure for completing Unites States Marshal ("Marshal") 285 Forms ("USM-285 Forms"); and it is further

**ORDERED** that once the Marshal receives the USM-285 Form(s) from Plaintiff and the Marshal so alerts the Clerk, the Clerk shall issue summons in connection with each USM-285 Form that has been submitted by Plaintiff, and the Marshal shall serve summons, the Amended Complaint and this Order pursuant to 28 U.S.C. § 1915(d) to the address specified on each USM-285 Form, with all costs of service advanced by the United States; and it is further

**ORDERED** that Defendants shall file and serve a responsive pleading within the time specified in Federal Rule of Civil Procedure 12, pursuant to 42 U.S.C. § 1997e(g)(2); and it is finally

**ORDERED** that the Clerk of the Court shall serve a copy of this Opinion and Order upon Plaintiff by regular mail.

    s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**