<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY MAURICE JACKSON,<br><br>              Plaintiff,<br><br>       v.<br><br>DR. SCOTT MILLER, *et al.*,<br><br>              Defendants. | Case No. 2:21-cv-09404 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion for Partial Summary Judgment filed by Defendants Barrington Lynch, M.D. ("Lynch") and Alejandrina Sumicad, APN ("Sumicad") (collectively, "Defendants") seeking to dismiss Anthony Maurice Jackson's ("Plaintiff") state law medical malpractice/negligence claims against them pursuant to Federal Rule of Civil Procedure 56(c) for failure to comply with New Jersey's Affidavit of Merit ("AOM") Statute, N.J.S.A. §§ 2A:53A-26 through -29. (ECF No. 69.) Plaintiff filed a response (ECF No. 72), Defendants filed a reply (ECF No. 73), and Plaintiff filed a sur-reply (ECF No. 74). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause having been shown, the Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

In April 2021, Plaintiff, a prisoner confined at East Jersey State Prison, filed his initial Complaint alleging Defendants acted with deliberate indifference to his serious medical needs in violation of 42 U.S.C. § 1983 and committed medical malpractice in the follow up treatment to Plaintiff's knee replacement surgery. (*See* ECF No. 1.) On August 3, 2021, Plaintiff filed an application to proceed in forma pauperis ("IFP"). (*See* ECF No. 9.) On October 5, 2021, the Court granted Plaintiff's IFP application and screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2) and 1915A. (*See* ECF Nos. 12 and 13.) The Court dismissed the Complaint without prejudice for failure to state a claim upon which relief can be granted. (*See id.*) Plaintiff moved to amend the Complaint and on June 28, 2022, Honorable James B. Clark, III, U.S.M.J. permitted Plaintiff's Amended Complaint to proceed as to his medical claims against Defendants and dismissed Plaintiff's remaining claim. (*See* ECF No. 19.) Judge Clark instructed Plaintiff to "file and serve the Amended Complaint, as modified by [Judge Clark's] Opinion and Order, within thirty (30) days." (*Id.* at 12.) Although Plaintiff failed to file his Amended Complaint as instructed, he did complete service of the Amended Complaint as to Defendants, and Defendants filed an Answer on September 22, 2022. (ECF No. 24.) In their Answer, Defendants included a demand that Plaintiff provide an AOM pursuant to N.J.S.A. 2A:53A-27 et seq. (*Id.* at 15.) Defendants further alleged the following with respect to their medical specialties: "Defendant, Barrington Lynch, M.D. is a licensed physician specializing in Internal Medicine. Defendant Alejandrina Sumicad, APN is a licensed Advanced Practice Nurse. The care and treatment rendered to Plaintiff in this action by these defendants was within their aforementioned medical specialties." (*Id.* at 14.)

On January 25, 2023, following several requests for extension of time from Plaintiff, Judge Clark issued a Letter Order in which the Court (1) vacated its prior directive for Plaintiff to file the

Amended Complaint, instead directing the Clerk of the Court to file the Amended Complaint that was annexed to Plaintiff's motion to amend; and (2) noted that the only remaining Defendants in the instant matter were Defendants Lynch and Sumicad, who served their Answer to the Amended Complaint on September 22, 2022. (ECF No. 31.) The same day, the Clerk of the Court filed Plaintiff's Amended Complaint. (ECF No. 32.)

The gravamen of Plaintiff's Amended Complaint is that Defendants provided inadequate medical care and were deliberately indifferent to his medical needs following a total left knee replacement. (*See generally id.*) The Amended Complaint submits that following Plaintiff's knee replacement surgery, he developed an infection. (*Id.* at ¶ 27-28.) Plaintiff submits that, as a result of Defendants' deliberate indifference for over a year, Plaintiff experienced "pain and suffering" from a "serious infection and nearly lost his life because his blood was infected." (*Id.* at ¶ 30.) As a result of these symptoms, Plaintiff was required to undergo several additional medical procedures on his left knee, including the insertion of a spacer into his knee on October 19, 2019, another medical procedure on August 5, 2020, and finally another total knee replacement and removal of the spacer on August 6, 2020. (*Id.* at ¶¶ 32-35.)

On February 10, 2023, Plaintiff requested "a time extension for the purpose of seeking professional representation." (ECF No. 37.) Prior to the Court receiving Plaintiff's letter, Defendants filed their first motion for partial summary judgment, arguing Plaintiff's medical malpractice claims must be dismissed for failure to serve an AOM within the statutorily prescribed window of 120 days after Defendants' Answer was served on September 22, 2022. (ECF No. 36.) On March 9, 2023, Plaintiff filed a motion for denial or stay of Defendants' first motion for partial summary judgment and for the appointment of pro bono counsel for the limited purpose of helping Plaintiff obtain an AOM. (ECF Nos. 38, 39.) Judge Clark denied Defendants' first motion for

partial summary judgment without prejudice as premature and appointed *pro bono* counsel for the limited purpose of assisting Plaintiff in determining whether he could obtain an AOM. (*See* ECF No. 42.) Judge Clark also extended the time in which Plaintiff had to file a timely AOM until sixty days from the date pro bono counsel made an appearance in this matter. (*See id.* at 10.)

On July 11, 2023, pro bono counsel was appointed to represent Plaintiff. (ECF No. 46.) On September 13, 2023, Plaintiff was granted forty-five (45) more days to engage an expert to sign an AOM. (ECF No. 69-3, Def. Stat. of Mat. Facts ("DSOMF"), ¶ 8.) On October 31, 2023, Defendants filed their second motion for partial summary judgment as an AOM had not been served on them. (*Id.* at ¶ 9.) On November 16, 2023, a status conference was entertained by Judge Clark, at which time Defendants' October 31, 2023 second motion for partial summary judgment was administratively terminated and the statutory deadline for the AOM was stayed. (*Id.* at ¶ 10.)

The parties participated in a settlement conference on February 5, 2024. (*Id.* ¶ 13.) On March 25, 2024, during a status conference, pro bono counsel advised that multiple providers in New Jersey had refused to sign an AOM, but counsel found an expert in Florida, specializing in Orthopedic Surgery, willing to sign an AOM. (*Id.* at ¶ 14.) At that time, the deadline for an AOM was further stayed. (*Id.* at ¶ 16.)

Defendants submit that on November 16, 2023 and February 4, 2024, Defendants advised pro bono counsel that the requisite specialties for an AOM were Internal Medicine and Nursing. (DSOMF at ¶¶ 11, 13.) On March 25, 2024, in response to pro bono counsel's statement that he intended to procure an AOM from an Orthopedic Surgeon, defense counsel objected, reminding pro bono counsel that Defendants are an Internal Medicine doctor and an Advanced Practice Nurse. (*Id.* at ¶ 15.) Plaintiff indicates that he does not have reliable information, nor can he investigate

Defendants claims that they repeatedly informed defense counsel of the requisite specialties. (ECF No. 72 at 3-4.)

On April 22, 2024, another status conference resulted in a Letter Order dated April 22, 2024, setting an April 26, 2024 deadline for serving an AOM. (*Id.* at ¶ 17.) No AOM was served on Defendants by April 26, 2024. (*Id.* at ¶ 19.) On April 30, 2024, pro bono counsel served an AOM by Dr. Omar D. Hussamy, M.D. on Defendants. (*Id.* at ¶ 20.)

Dr. Hussamy's AOM is dated April 22, 2024. (ECF No. 69-2 at 64-65, Plaintiff's AOM.) According to Plaintiff's AOM, Dr. Hussamy, is an Orthopedist licensed in Florida, New York, California, and Texas. (*Id.* at ¶ 2.) Dr. Hussamy received his M.D. from University of Virginia Medical School in 1988 and completed his Orthopedic Surgery residency at University of North Carolina at Chapel Hill. (*Id.*) Dr. Hussamy completed a fellowship in Sport Medicine and Hand Surgery and is board certified in foot surgery. (*Id.* at ¶¶ 2-3.) Dr. Hussamy "devoted [his] practice substantially to orthopedics for the last 35 years" and had "performed the same surgery involved in this matter many times." (*Id.* at ¶ 3.) Dr. Hussamy averred that his "education, training, and expertise clearly relate to the general area or specialty involved in this action." (*Id.* at ¶ 4.) Dr. Hussamy reviewed Plaintiff's medical records and opined:

> [T]here exists a reasonable probability that the care, skill, or knowledge exercised by his physician, Dr. Scott Miller, M.D. and St. Francis Medical Center and Dr. Lynch of East Jersey State Prison, fell outside of acceptable professional standards of medical care or the accepted treatment practices, in that he failed to appropriately perform the surgery, which led to multiple complications and in that they failed to properly address his post-surgical complaints, leading to additional pain, suffering, and the need to additional surgeries.

(*Id.* at ¶ 6.)

In a letter dated May 1, 2024, defense counsel objected to the AOM, noting that Dr. Hussamy is a specialist in Orthopedic Surgery and Defendant Lynch is a specialist in Internal

Medicine. (*Id.* at ¶ 22, citing ECF No. 69-2 at 67, Ex. H.) Defense counsel submitted that Dr. Hussamy did not meet the statutory requirements of the AOM statute because Plaintiff's "affiant must specialize in the same specialty as the defendant upon whom he is opining." (ECF No. 69-2 at 67.)

On May 17, 2024, Defendants filed the instant motion for partial summary judgment. (ECF No. 69.) Defendants argue that they are entitled to summary judgment on Plaintiff's medical malpractice claims because (1) Plaintiff failed to serve Defendants with a timely AOM, and (2) the AOM fails to comply with the same specialty requirement of N.J.S.A. 2A:53A-41. (*See generally* ECF No. 69-3.) Plaintiff filed an opposition (ECF No. 72), Defendants filed a reply (ECF No. 73), and Plaintiff filed a sur-reply (ECF No. 74.)

## II.    LEGAL STANDARD

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The mere existence of an alleged disputed fact is not enough. Rather, the opposing party must prove there is a genuine issue of a material fact. *Id.* An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.*

On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts

to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

In a precedential decision, the Third Circuit expressly held that "the affidavit of merit is not a pleading requirement" in federal court (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 160, 3d Cir. 2000), and instructed that such motions for dismissal are properly brought under Fed. R. Civ. P. 56 as motions for summary judgment.[1] *See Nuveen Mun. Tr. v. Withumsmith Brown, P.C.*, 692 F.3d 283, 303 n.13 (3d Cir. 2012) ("That the affidavit [of merit] is not a pleading requirement counsels that a defendant seeking to 'dismiss' an action based on the plaintiff's failure to file a timely affidavit should file a motion for summary judgment under Rule 56, and not a motion to dismiss for failure to state a claim under Rule 12(b)(6).").

---

[1] The affidavit of merit statute states that failure to provide an affidavit of merit "shall be deemed a failure to state a cause of action," N.J.S.A. 2A:53A-29, but the timeline for filing an affidavit of merit is triggered by defendant's filing of an answer. Though state courts construe the failure to file an affidavit as the failure to state a claim at the pleading stage, *see Ferreira v. Rancocas Orthopedic Assocs.*, 178 N.J. 144, 150 (2003) ("the plaintiff's failure to serve an affidavit within 120 days of the filing of the answer is considered tantamount to the failure to state a cause of action, subjecting the complaint to dismissal with prejudice."), the Third Circuit does not consider the affidavit of merit a pleading requirement or cause for dismissal under Rule 12(b)(6) because the affidavit of merit requirement is triggered only after the answer is filed.

III.    **DECISION**

Defendants argue Plaintiff's state tort claims must be dismissed because Plaintiff did not

comply with New Jersey's AOM Statutes, N.J.S.A. § 2A:53A-27 and N.J.S.A. § 2A:53A-41. (*See*

ECF No. 69-3.)

A.    **The AOM Statutory Scheme**

In an action alleging professional malpractice, New Jersey requires an AOM. *See* AOM

Statute, N.J.S.A. §§ 2A:53A–26 to 29.[2] The AOM is a statement by an expert that the defendant

professional breached an applicable duty of care. N.J.S.A. § 2A:53A-27. *See generally Ryan v.*

*Renny*, 203 N.J. 37 (2010); *Szemple v. Univ. of Med. & Dentistry of N.J.*, 162 F. Supp. 3d 423, 426

(D.N.J. 2016). "The stated purpose of the AOM statute, is laudatory—to weed out frivolous claims

against licensed professionals early in the litigation process." *Meehan v. Antonellis*, 141 A.3d

1162, 1169 (N.J. 2016) (internal citation omitted).

The AOM statute states in relevant part:

> In any action for damages for personal injuries, wrongful death or
> property damage resulting from an alleged act of malpractice or
> negligence by a licensed person in his profession or occupation, the
> plaintiff shall, within 60 days following the date of filing of the
> answer to the complaint by the defendant, provide each defendant
> with an affidavit of an appropriate licensed person that there exists
> a reasonable probability that the care, skill or knowledge exercised
> or exhibited in the treatment, practice or work that is the subject of
> the complaint, fell outside acceptable professional or occupational
> standards or treatment practices.

---

[2] A federal court must apply the AOM requirement to malpractice claims under New Jersey law, whether under diversity jurisdiction or the Federal Tort Claims Act. *See Kindig v. Gooberman*, 149 F.Supp.2d 159, 163 (D.N.J. 2001) (diversity case (citing *Chamberlain*, 210 F.3d at 157)); *Fontanez v. United States*, 24 F.Supp.3d 408, 411 (D.N.J. 2014) (FTCA case (citing *Staub v. United States*, No. 08–2061, 2010 WL 743926, at *2 (D.N.J. Mar. 3, 2010))). *A fortiori*, it applies to state law claims brought in their own right, pursuant to the Court's supplemental jurisdiction. 28 U.S.C. § 1367.

N.J.S.A. § 2A:53A–27. "The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause." *Id.* "The submission of an appropriate affidavit of merit is considered an element of the claim. Failure to submit an appropriate affidavit ordinarily requires dismissal of the complaint with prejudice." *Meehan*, 141 A.3d at 1169.

The AOM statute defines the class of cases in which an AOM must be filed. An AOM is required in "all actions for damages based on professional malpractice," *Ryan*, 999 A.2d at 435, brought against "a licensed person in his profession or occupation," N.J.S.A, § 2A:53-27. The AOM statute specifies sixteen such professions and occupations. *See* N.J.S.A. § 2A:53A-26. Relevant here, a covered professional includes "a physician in the practice of medicine or surgery pursuant to [N.J.S.A. § 45:9-1 to -58]" and "a registered professional nurse pursuant to [N.J.S.A. § 45:11-23 to -67.]" N.J.S.A. § 2A:53A-26.

The AOM statute also sets out who is qualified to be an affiant of an AOM. *See* N.J.S.A. § 2A:53A-27. In medical malpractice cases, such as this one, N.J.S.A. § 2A:53A-41 ("Section 41") controls and sets a "kind-for-kind" standard of eligibility to be an AOM affiant, which imposes various criteria depending on the level of specialization. Section 41 "generally requir[es] that the challenging expert be equivalently-qualified to the defendant." *Lomando v. United States*, 667 F.3d 363, 382–83 (3d Cir. 2011); *see also Nicholas v. Mynster*, 213 N.J. 463, 467 (2013) (explaining that plaintiff's medical experts must possess the statutory credentials necessary to testify against defendant physicians"). In other words, if the allegedly negligent doctor was a specialist in a recognized specialty and the care or treatment at issue involves that specialty, the affiant must be a specialist in that specialty; if the allegedly negligent doctor was board certified in a recognized specialty and the care or treatment at issue involves that specialty, the affiant must be board

certified in that specialty. *See* N.J.S.A. 2A:53A-41(a). Furthermore, N.J.S.A. 2A:53A-41(a) "requires that plaintiff['s] medical expert must 'have specialized at the time of the occurrence that is the basis for the [malpractice] action in the same specialty or subspecialty' as defendant['s] physicians." *Nicholas*, 213 N.J. at 468. Moreover, "a defendant physician must indicate in [her] answer, if [s]he acknowledges treating the patient, the specialty, if any, in which [s]he was involved when rendering treatment." *Buck v. Henry*, 207 N.J. 377, 383 (2011); *see also* N.J. Ct. R. 4:5-3 (codifying that disclosure requirement).

### B.      Timeliness

Defendants first argue that Plaintiff's state law medical malpractice claims should be dismissed because Plaintiff's AOM was not timely. (ECF No. 69-3 at 6-11.) Defendants claim that Plaintiff failed to serve this AOM on Defendant Lynch by the April 26, 2024 Court issued deadline. Additionally, Defendants argue that at this time Plaintiff has still failed to serve Defendant Sumicad with an AOM. (*See id.*)

As noted above, pursuant to the AOM statute, the affidavit of merit "must be provided within 60 days after the defendant files its answer." *Nuveen Mun. Tr.*, 692 F.3d at 290 (citing N.J.S.A. § 2A:53A-27). However, "[f]or good cause shown, the Statute provides one extension period of an additional 60 days contiguous to the initial 60-day period." *Id.* (citing N.J.S.A. § 2A:53A-27). As explained by the Third Circuit, "[t]he penalty for not following the . . . Statute is severe. Absent a showing of one of four limited exceptions, the failure to file the affidavit 'shall be deemed a failure to state a cause of action.'" *Id.* at 290-91 (quoting N.J.S.A. § 2A:53A-29). "The four limited statutory exceptions are (i) a statutory exception regarding lack of information; (ii) a 'common knowledge' exception; (iii) substantial compliance with the affidavit of merit

requirement; or (iv) 'extraordinary circumstances' that warrant equitable relief." *Id.* at 305 (citations omitted); *see* N.J.S.A. § 2A:53A-28.

First, Defendants argue that to date Plaintiff has failed to procure an AOM relevant to Defendant Sumicad. Magistrate Judge Clark set a deadline of April 26, 2024 for Plaintiff to serve a timely AOM on Defendants. (*See* ECF No. 68.) Dr. Hussamy authored an AOM on April 22, 2024. (*See* ECF No. 69-2 at 64-65.) However, the AOM does not implicate Defendant Sumicad. (*See id.*) In the AOM, Dr. Hussamy opined "there exists a reasonable probability that the care, skill, or knowledge exercised by his physician, Dr. Scott Miller, M.D. and St. Francis Medical Center and Dr. Lynch of East Jersey State Prison, fell outside of acceptable professional standards of medical care or the accepted treatment practices." (*Id.* at 65.) The AOM offers no opinion on the actions of Defendant Sumicad. Therefore, the Court finds Plaintiff has failed to timely serve Defendant Sumicad with an AOM and Plaintiff's state law tort claims against Defendant Sumicad are dismissed with prejudice.

Next, Defendants argue that the AOM was untimely served on Defendant Lynch. Defendants argue that even though the Magistrate Judge provided Plaintiff with extensions and stayed the AOM deadline, Plaintiff failed to serve his AOM by the Court ordered April 26, 2024 deadline. On March 31, 2023, Magistrate Judge Clark found the pleadings here were not fixed until January 25, 2023, when the Magistrate Judge ordered the Clerk of the Court to file Plaintiff's Amended Complaint and deemed the Amended Complaint as answered by Defendants' September 22, 2022 filing. (*See* ECF No. 42 at 5.) Accordingly, the 120-day period to file a AOM was not set to expire until May 25, 2023.

The Magistrate Judge then appointed pro bono counsel to assist Plaintiff in obtaining an AOM. It was determined Plaintiff was diligent in requesting the appointment of pro bono counsel

and that the factual investigation and analysis that was necessary for Plaintiff to secure an AOM appeared to "go beyond Plaintiff's abilities while he is incarcerated." (*Id.* at 5-8.) It was also noted that Plaintiff had repeatedly represented he had not been able to obtain medical record and was therefore hindered in conducting factual investigation. (*Id.* at 8, citing ECF Nos. 28, 30, 37 and 39.) The Magistrate Judge explained it would take time for counsel to be appointed and based on Plaintiff's diligence is attempting to comply with the AOM statute, extraordinary circumstances existed to warrant an extension of time beyond the 120-day statutory period to file the required AOM. (*Id.* at 9-10.)

The Magistrate Judge extended the time to comply with the AOM statute for sixty days from the date pro bono counsel entered his appearance in this matter. (*Id.* at 10.) On July 11, 2023, counsel was appointed to represent Plaintiff. (ECF No. 46.) On September 13, 2023, the Magistrate Judge granted pro bono counsel a 45-day extension of time to engage an expert to sign an AOM. (DSOMF at ¶ 8.) Defendants acknowledge that following a status conference the Magistrate Judge stayed Plaintiff's time for serving Defendants with an AOM, while the parties attended a settlement conference. (*Id.* at ¶ 13.) Defendants also note that following March 2024 and April 2024 status conferences, Plaintiff's time for serving an AOM was extended until the final court issued deadline of April 26, 2024. (*Id.* at ¶¶ 14, 16, 17.) Defendants did not appeal or object to any of the Magistrate Judge's extension decisions to this Court.

Although Dr. Hussamy's AOM is dated April 22, 2024 (ECF No. 69-2 at 65), Plaintiff did not serve Defendants with the AOM until April 30, 2024, four days after the April 26, 2024 deadline. (DSOMF at ¶¶ 19-20.)

New Jersey favors deciding cases on their merits, and the "substantial compliance" exception aims to "temper the draconian results of an inflexible application of the statute."

*Ferreira*, 836 A.2d at 783. The New Jersey Supreme Court has established a five-part test to determine whether the equitable doctrine of substantial compliance excuses noncompliance with the AOM Statute:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim[;] and (5) a reasonable explanation why there was not a strict compliance with the statute.

*Galik v. Clara Maass Med. Ctr.*, 167 N.J. 341, 771 A.2d 1141, 1149 (2001) (quoting *Bernstein v. Bd. of Trs. of Tchrs' Pension & Annuity Fund*, 151 N.J. Super. 71, 376 A.2d 563, 566 (App.Div.1977)). "Satisfying those elements guarantees that the underlying purpose of the statute is met and that no prejudice is visited on the opposing party." *Id.*

In *Ferreira*, the New Jersey Supreme Court considered facts similar to the ones here: the plaintiff received an AOM prior to the expiration of the time limits for serving a timely AOM, which, due to inadvertence of counsel, was not forwarded to defense counsel. 178 N.J. at 148. Plaintiff's counsel forwarded the AOM to defense counsel eighteen days after the statutory deadline for delivering the AOM had past, but before defense counsel filed a motion to dismiss the complaint for failure to comply with the AOM statute. *Id.* The New Jersey Supreme Court explained that plaintiff's counsel had complied with the "underlying legislative purpose by having an expert verify the meritorious nature of the malpractice claims at an early stage" and the defendants did not "contend that they suffered prejudice by the eighteen-day late service of the affidavit." *Id.* at 152. The Supreme Court noted that it was not until after defense counsel receive the AOM that a motion to dismiss was filed. *Id.* On these facts, the *Ferreira* court announced the following rule:

> In a case where the plaintiff has in hand an affidavit within the 120-day statutory period and serves the affidavit on defense counsel

outside that time frame but before defense counsel files a motion to dismiss, the defendant shall not be permitted to file such a motion based on the late arrival of the affidavit. If defense counsel files a motion to dismiss after the 120–day deadline and before plaintiff has forwarded the affidavit, the plaintiff should expect that the complaint will be dismissed with prejudice provided the doctrines of substantial compliance and extraordinary circumstances do not apply. That formulation places strong incentives on both plaintiffs' and defense counsel to act diligently.

*Id.* at 154.

Similar here, Plaintiff had a signed AOM prior to the Court issued April 26, 2024 deadline for serving a timely AOM. (*See* ECF No. 69-2 at 65.) Counsel served the AOM on Defendants on April 30, 2024. Thereafter, on May 17, 2024, Defendants filed the instant motion for summary judgment. Following the rule announced in *Ferreira*, Defendants are not entitled to summary judgment here, as Plaintiff served his AOM prior to Defendants filing of their motion for summary judgment. Therefore, the Court finds that Defendant Lynch's AOM is not untimely and the motion for summary judgment is denied as to this issue.

### C.    Eligibility of Dr. Hussamy as AOM Affiant

Defendants' motion also argues that Dr. Hussamy is not a qualified affiant under N.J.S.A § 2A:53A-41. (ECF No. 69-3 at 12-16.) Defendants submit Defendant Lynch is a "licensed physician practicing medicine in the specialty of Internal Medicine, who practiced within that specialty when he rendered care and treatment to Plaintiff." (*Id.* at 14.) Defendants further submit that Dr. Hussamy is a Board-Certified Orthopedic Surgeon, with additional specialization in Sports Medicine, hand surgery, and foot surgery. (*Id.*) Therefore, Defendants argue that Dr. Hussamy has a different board certification than Defendant Lynch. (*Id.*)

As explained above, in medical malpractice cases, such as this one, Section 41 controls and sets a "kind-for-kind" standard of eligibility to be an AOM affiant, which "generally requir[es] that the challenging expert be equivalently-qualified to the defendant." *Lomando*, 667 F.3d at

382–83. Where the physician alleged to be at fault practices in a specialty recognized by the American Board of Medical Specialties, the plaintiff's AOM affiant must practice in the same specialty. *See Nicholas*, 64 A.3d at 539. As explained by the Supreme Court in *Buck*:

> Under N.J.S.A. 2A:53A–41, the first inquiry must be whether a physician is a specialist or general practitioner. If the physician is a specialist, then the second inquiry must be whether the treatment that is the basis of the malpractice action "involves" the physician's specialty. When the treatment "involves" the physician's specialty the equivalency requirements apply, otherwise the specialist is subject to the same affidavit requirements as if he were a general practitioner. *See ibid.* [citation omitted.] . . . . In the case of a general practitioner, an affidavit from another general practitioner or from a physician experienced with the treatment performed will satisfy the statute. *See ibid.*

207 N.J. at 391.

Here, Defendants argue Dr. Hussamy's AOM is insufficient because he is not an internal medicine specialist like Defendant Lynch. Defendants support this argument with Defendant Lynch's Answer to the Amended Complaint, which indicates he is a licensed physician specializing in Internal Medicine. (ECF No. 24 at 14.) Defendants have also attached to their response to Plaintiff's opposition, an internet search that indicates Defendant Lynch has a specialty in internal medicine, with a subspeciality in geriatric medicine. (*See* ECF No. 73-2 at 49-50.)

While Defendants submit that Defendant Lynch has an internal medicine specialty, the internet search they provide indicates that Defendant has a subspecialty in geriatric medicine. The American Board of Medical Specialties defines the subspecialty of geriatric medicine as follows:

> **Geriatric Medicine**
> An internist who has special knowledge of the aging process and special skills in the diagnostic, therapeutic, preventive and rehabilitative aspects of illness in the elderly. This specialist cares for geriatric patients in the patient's home, the office, long-term care settings such as nursing homes and the hospital.

https://www.abms.org/board/american-board-of-internal-medicine/#abim-gm    (last    visited

November 23, 2024).

To meet the initial burden on a motion for summary judgment, Defendant must provide

evidence showing that he is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In

this context, therefore, Defendant must provide evidence supporting his claim that he was acting

in his specialty or subspecialty and that the care or treatment he provided Plaintiff involves his

internal medicine specialty or his geriatric subspecialty.

Defendants fail to brief how Defendant Lynch was acting as an internist with a subspecialty

in geriatric medicine at the time he rendered post-operative knee replacement care to Plaintiff. In

fact, Defendants fail to mention Defendant Lynch's subspecialty at all. Under the federal summary

judgment standard, Defendants must provide evidence that the treatment Defendant Lynch

provided for Plaintiff's post-operative knee replacement involved his specialty as a geriatrician or

internist. As Defendants have failed to provide evidence or even briefing on whether the care or

treatment provided to Plaintiff involved Defendant Lynch's specialty or subspecialty, or was

outside of the specialty, the Court denies summary judgment on that basis. *See Celotex*, 477 U.S.

at 323 (placing initial summary judgment burden on the moving party).

In his opposition brief, Plaintiff requests that the Court waive the same specialty

requirement. N.J.S.A 2A:53A-41(c) permits a Court to waive the "same specialty or subspecialty"

requirement, if, upon motion "after the moving party has demonstrated to the satisfaction of the

court that a good faith effort has been made to identify an expert in the same specialty or

subspecialty, the court determines that the expert possesses sufficient training, experience and

knowledge to provide the testimony as a result of active involvement in, or full-time teaching of,

medicine in the applicable area of practice or a related field of medicine." The waiver exception

to the requirements of the Affidavit of Merit statute was "to permit meritorious cases, for which no equivalently-qualified expert can be obtained to be aired in the courtroom." *Ryan*, 203 N.J. at 57. However, to obtain a waiver, Plaintiff must file a formal motion seeking such. Plaintiff has failed to do so here and, therefore, the Court may not grant his request for a waiver.

## IV.    CONCLUSION

For the reasons expressed above, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 69.) Defendants' motion is granted as to Defendant Sumicad and Plaintiff's state law medical malpractice claims against Defendant Sumicad are dismissed with prejudice. The Court denies the remainder of Defendants' motion for summary judgment. An appropriate order follows.

Dated:  December 5, 2024                          */s/ Brian R. Martinotti*
                                                  **HON. BRIAN R. MARTINOTTI**
                                                  **UNITED STATES DISTRICT JUDGE**